## Case No. 13,503.
### STOUT v. SIOUX CITY & P. R. CO.
[11 Am. Law Reg. (N. S.) 226; 6 Am. Law Rev. 759.]

Circuit Court. D. Nebraska. 1872.

NEGLIGENCE DEFINED—DANGEROUS MACHINERY—INJURY TO YOUNG CHILD—CONTRIBUTORY NEGLIGENCE OF FATHER—RAILROAD TURNTABLES.

[1. Negligence may be defined to be doing some lawful act in a careless, unusual, and improper way, or omitting the performance of some act required by law to be done, by which injury results to the person or property of another.]

[2. Negligence of a father in permitting his young and inexperienced child to wander from home, and go upon a dangerous piece of machinery, will not prevent liability of the owner of the machinery for an injury to the child, resulting from such owner's carelessness and negligence in not properly guarding and securing the same.]

3. If a railroad company keeps and uses its turntable as prudent and well-managed railroad companies in other places are in the habit of doing, and it is not the habit of such companies to keep them locked, so that they cannot be turned by children, or others, such company is not liable for a personal injury resulting to a young child, playing about the turntable, by reason of its failure to keep the same guarded or locked, so that it could not be turned by children.]

This was an action brought to recover the sum of $15,000 damages resulting to the plaintiff [Harry G. Stout], a minor child

aged six years, on account of injuries received while at play upon the "turntable" of the railroad company, in March 1869. The plaintiff's petition alleged that the defendant was, at the time the injuries were received, running and operating a railroad running through the town of Blair in Washington county, Nebraska, and in connection with said railroad used and operated a "turntable," which was so "constructed and arranged as to be easily turned around and revolved in a horizontal direction; that across the upper surface thereof there were fastened two large and heavy bars of iron corresponding with the iron rails of the railroad track used in connection with said turntable, and so placed and arranged that when the turntable revolved, the ends of the iron bars running across the face of the same passed by the ends of the rails on the railroad track; that said turntable was situated in a public place, and in immediate proximity to a passenger depot of the defendant;" that many children were in the habit of going upon said turntable to play; that the turntable was unfastened and in no way protected to prevent it being turned around at the pleasure of small children; that the defendant had notice of these facts; that the plaintiff was a child of tender years without judgment or discretion, and that in consequence of the carelessness and negligence of the defendant in not locking said turntable, it was revolved, and while it was being so revolved by other children, "the plaintiff had his right foot caught between the ends of one of the iron bars on said turntable and the end of one of said rails upon the railroad track," and his foot was badly crushed, causing the loss of several bones of his foot, and was permanently injured. Petition also alleged that it was the duty of the defendant to keep its turntable fastened, or in some way protected so that children could not have access thereto. The answer of the defendant denied all the averments of the petition, and alleged that the plaintiff had no right upon the turntable; that he was a trespasser, and "that law or usage or reasonable prudence did not require the defendant to keep its turntable locked or guarded." Upon the trial the plaintiff proved substantially all the averments of the petition, excepting that the proof showed that the turntable was distant from the depot of the defendant about one-quarter of a mile; that the nearest public street was distant from the turntable about 1500 feet; that the plaintiff lived with his parents about three-quarters of a mile away. The plaintiff also proved that the turntable was so constructed that it was easily turned around by children of the age of plaintiff, and was even turned around by the wind. The defendant introduced several railroad engineers to prove, and did prove in fact, that it was not the custom of other railroads to fasten, lock, or in any manner guard their turntables.

E. Wakely and Strickland, Ballard & Walton, for plaintiff.

Cook & Hubbard, for defendant.

DUNDY, District Judge (charging jury). You are directed to find in addition to the general verdict three special verdicts as follows:—(1) Was the father of the plaintiff guilty of any negligence in allowing his child, the plaintiff, to wander away from his home upon the grounds of the defendant? (2) Was the plaintiff capable of exercising any judgment as to the character of the machinery upon which he was playing, and if so, was he negligent at the time he received the injury? (3) Was the defendant guilty of negligence in allowing the turntable in question to remain unfastened and unguarded? Careful reading of the petition and answer, which form the issues, will show clearly enough that there is but little in dispute between the parties thereto, so far as the alleged facts are concerned. It is upon questions of law, mostly, that the parties or their counsel differ, and their differences are as irreconcilable as the adjudged cases upon which they rely. There does not seem to be much, if any, room to doubt that the plaintiff was, at the time of the alleged accident, a child of tender years. That the alleged injury to the foot was received at the time, place, and in the manner stated in the petition, and that the "turntable" upon which the plaintiff received the alleged injury was owned and used by the defendant at the time aforesaid. Nor do I understand counsel to question either one of these propositions. It would seem, then, stripping the whole case of all unnecessary surroundings, that the question of negligence of one or both parties is about all that is in controversy between them. What, then, is "negligence," according to the legal acceptation of that word? The meaning of the word is pretty generally, and no doubt correctly, understood by those learned in the law, but, in my judgment, it is exceedingly hard to define. I think I could give no definition of the word where I would be willing to adhere to it in every case where I might be called upon to apply a test. For, to ascertain the question of the existence of negligence, time, place, things, persons, results, and every thing connected with the entire transaction in question must be taken into consideration. And when this be done, if we find that some person or corporation has done some thing, not in itself unlawful, in a careless and improper way, and without using ordinary caution, or where such person or corporation is required by law to do certain things, the performance of which is, for any reason, omitted or neglected, in consequence and by reason of which wrongs are done and injuries received, we can then safely conclude that the party charged therewith is guilty of "negligence." If I am correct in what is here stated, I think I can give a general

definition of the word "negligence" that will properly apply to the controversy between the parties to this suit, and for my present purpose only I will say, "it is doing some lawful act in a careless, unusual, and improper way, or omitting the performance of some act required by law to be done, by which injury results to the person or property of another." With the word thus defined, you must apply the rule to the case at bar, and if you find that either party has been guilty of such negligence, it will be your duty to visit the consequences thereof on the party who is responsible for the very serious accident described by the witnesses who have testified herein.

It is claimed and insisted on by counsel for the defendant, that the plaintiff's father was guilty of negligence in permitting him to wander so far from home, and to go upon the turntable of the defendant, which, it is claimed, was near three-quarters of a mile distant. This question, as well as the question of negligence on the part of the defendant, is not without its embarrassment. And the opinions I now entertain and here express thereon, I may, after further examination and more mature reflection, be compelled to change. A father is bound by law to maintain and protect his children. It is a natural as well as legal duty resting on him so to do. To effect this, he is authorized to exercise the necessary restraint and control over the child to accomplish this responsible duty. This is a duty the father owes to all of his children alike. And more especially does he owe it to those of tender years, who are unable from youth and inexperience, to take care of themselves. You will observe that this duty is one the father owes to his child. But if the father fails to discharge that duty, and a child wanders off, and is injured in consequence of the negligence of another, the negligence of the father will not excuse the party whose negligence caused the injury complained of. If, then, the father of this plaintiff negligently permitted him to wander off from his home, and to go upon the turntable, where, it is claimed, he received the injury complained of; and if the plaintiff was so young and inexperienced, and did not possess sufficient judgment to warn him of the danger of the place or the character of the machinery where the accident occurred, and the accident was the result of the carelessness and negligence of the defendant, there would, nevertheless, still be a liability on the part of the defendant for the injury sustained, if any. If this view of the law be the correct one, it would seem to make but little difference about the alleged negligence of the father of the plaintiff. But does the testimony show, or tend to show, negligence on the part of the father which finally resulted as before stated? A child possessed of natural reason and ordinary intelligence, and endowed with the full powers of locomotion, cannot be tied up and confined as we confine our domestic animals. This would not be permitted, were it even practicable. Most, if not all, of us who are at all conversant with human nature, and understand the difficulties growing out of the parental relation, know full well how easy it is for children six or eight years of age to escape the watchful care and vigilance of parents for the purpose of indulging in childlike amusements. These things ought to be fully considered by you in order to ascertain if the father of the plaintiff was guilty of negligence in the premises. I mean, of course, in permitting the plaintiff to wander off as before stated. Was the plaintiff possessed of sufficient judgment and understanding to apprise him of the dangerous undertaking which he claims he failed to accomplish, and from which failure he claims the injury arose? If he had sufficient knowledge, judgment, and foresight to know or see this, and did not exercise the same so as to avoid the danger of such an undertaking, the defendant would not be liable, notwithstanding it may have been guilty of some negligence. But of this you alone must judge.

If you should be of the opinion, from the evidence, that the plaintiff was injured at the time, in the place and manner stated in the petition and by the witnesses, and that he was at the time too young to have the necessary discretion to avoid such a danger as he claims attended him, and that he was therefore without blame, then it will become important to inquire about the alleged negligence of the defendant. Does the testimony show negligence on the part of the defendant? You will recollect from the evidence where the depot, round-house, and turntable were at the time situated, the distance they were from each other and from the plaintiff's home. You will also recollect the character of the country surrounding and in close proximity to the same. The plaintiff claims that the turntable was in a public place, and where children were in the habit of going and playing upon it. The defendant claims that it was in an unfrequented place, remote from public places, and where children had no right to go, and even if the plaintiff had a right to be there, that no negligence could be imputed to the defendant, for the reason that due diligence was used by the defendant in taking care of and protecting the turntable. If the turntable was a heavy and dangerous machine, and in a public place where children were in the habit of going to play upon it with the knowledge of the defendant or its servants, as the plaintiff claims, then it would seem to me to be necessary to protect it in some way, either by fastening or by enclosing the same. But if it was remote from places of public resort, or if the defendant or its servants had no knowledge of boys going there to play upon it, so that no danger could reasonably be apprehended from it,

even though it may have been in the open prairie, I do not think such diligence would be required of the defendant. So the degree of diligence in such a case would greatly depend on the locality in which the turntable might be found. But to show that due care and diligence have been exercised in the premises the defendant called several witnesses to testify upon the subject of diligence used by other railroad companies in matters of the same kind. The testimony upon this subject is before you, and if you are satisfied from that that other railroad companies, when the same are properly and carefully managed, make their turntables, manage and leave them in a condition such as the one where the accident is said to have occurred was at the time, then you would not be justified in finding that the defendant was guilty of negligence. If an individual does what prudent men generally do, there is no danger of incurring risk or loss from alleged negligence. So with railroad or any other companies. It is true, then, that if the defendant kept and used its turntable, as prudent and well-managed railroad companies in other places kept and managed theirs, no liability could attach to the defendant for the injury in question, even if the plaintiff was without blame. This question you will determine for yourselves upon the testimony introduced in support of it. If you should be of the opinion from the evidence in the cause, all taken and considered together, that the plaintiff is entitled to recover, the only remaining question will be, what is the measure of damages which the plaintiff may be entitled to recover? There is no rule by which we can arrive at the precise cash value of a hand, a foot, or the loss of the use of either. The nature of such a loss or such an injury is not susceptible of it. But in determining a question of this kind, you must take into consideration the entire facts and circumstances stated in the evidence. The extreme youth of the plaintiff; the character and extent of the injury to the limb; the probable effect the injury will have on the future and further development of the limb; the permanent nature of the disability; the great bodily pain consequent upon the injury, and the sickness resulting therefrom. In short, every fact and circumstance occurring since the injury was received, that tends to throw light on the condition of the boy in the past, present, or future, should be fairly and fully considered in order to reach a fair estimate of damages to be awarded to him.

Let it be fully understood here and now, that whatever conclusion is reached by you it must be based upon the testimony as you understand it. This must be taken and considered all together, and thereafter the result ought to be as above stated.

In conclusion, I will only say that if you believe from the evidence that the plaintiff was guilty of negligence as before defined, then your verdict should be for the defendant. On the other hand, if you believe from the evidence that the plaintiff was free from blame, and that the negligence of the defendant caused or contributed to the injury complained of, then your verdict should be for the plaintiff for such sum as you in your judgment may see proper to award him, not exceeding $15,000.

[NOTE. The jury impaneled for this hearing failed to agree, and on the second trial the jury found a verdict for the plaintiff for $7,500. Case No. 13,504. A writ of error was then sued out, and the cause carried to the supreme court, where the judgment of the circuit court was affirmed. 17 Wall. (84 U. S.) 657. See 8 Fed. 794.]